United States District Court

Eastern District of California

Paul Loutzenhiser,

        Plaintiff,                    No. Civ. S 04-1937 LKK PAN P

   vs.                                   Findings and Recommendations

Alvaro C. Traquina, et al.,

        Defendants.

                              -oOo-

    Plaintiff is a state prisoner prosecuting a civil rights action.  The case proceeds on the September 16, 2004, complaint. The court herein addresses plaintiff's February 1, 2005, motion for summary judgment; the May 23, 2005, cross-motion for summary judgment of defendants Traquina, Webster and Cervantes; and defendant Franklin's December 20, 2004, motion to dismiss and May 25, 2005, cross-motion for summary judgment.

    The pleading claims defendants violated plaintiff's right to adequate medical care under the Eighth Amendment, discriminated

against him based on his disability under the Americans with Disabilities Act (ADA), and violated his right to due process under the Fourteenth Amendment. Plaintiff seeks damages and injunctive relief.

Standard on Summary Judgment

A party may move, with or without supporting affidavits, for a summary judgment and the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a)-(c).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A fact is "material" if it affects the right to recover under applicable substantive law. Id. The moving party must submit evidence that establishes the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" that the moving party believes demonstrate the absence of a genuine issue of material fact.

1  Id., at 323.  If the movant does not bear the burden of proof on
2  an issue, the movant need only point to the absence of evidence
3  to support the opponent's burden.  To avoid summary judgment on
4  an issue upon which the opponent bears the burden of proof, the
5  opponent must "go beyond the pleadings and by her own affidavits,
6  or by the "'depositions, answers to interrogatories, and
7  admissions on file,' designate 'specific facts showing that there
8  is a genuine issue for trial.'"  Id., at 324.  The opponent's
9  affirmative evidence must be sufficiently probative that a jury
10 reasonably could decide the issue in favor of the opponent.
11 Matsushita Electric Industrial Co., Inc. v. Zenith Radio
12 Corporation, 475 U.S. 574, 588 (1986).  When the conduct alleged
13 is implausible, stronger evidence than otherwise required must be
14 presented to defeat summary judgment. Id., at 587.
15      Fed. R. Civ. P. 56(e) provides that "supporting and opposing
16 affidavits shall be made on personal knowledge, shall set forth
17 such facts as would be admissible in evidence, and shall show
18 affirmatively that the affiant is competent to testify to the
19 matters stated therein."  Nevertheless, the Supreme Court has
20 held that the opponent need not produce evidence in a form that
21 would be admissible at trial in order to avoid summary judgment.
22 Celotex, 477 U.S. at 324.  Rather, the questions are (1) whether
23 the evidence could be submitted in admissible form and (2) "if
24 reduced to admissible evidence" would it be sufficient to carry
25 the party's burden at trial.  Id., at 327.  Thus, in Fraser v.
26 Goodale, 342 F.3d 1032 (9th Cir. 2003), objection to the opposing

party's reliance upon her diary upon the ground it was hearsay was overruled because the party could testify to all the relevant portions from personal knowledge or read it into evidence as recorded recollection.

A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an affidavit. Schroeder v. McDonald, 55 F.3d 454 (9th Cir. 1995); McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987). A verified motion based on personal knowledge in opposition to a summary judgment motion setting forth facts that would be admissible in evidence also functions as an affidavit. Johnson v. Meltzer, 134 F.,3d 1393 (9th Cir. 1998); Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004). Defects in opposing affidavits may be waived if no motion to strike or other objection is made. Scharf v. United States Attorney General, 597 F.2d 1240 (9th Cir. 1979).

Undisputed Facts

The following facts are undisputed.

In the early 1970's plaintiff injured his right leg, causing it to be one inch shorter than the left.

Plaintiff arrived at Solano April 30, 2002.

July 29, 2002, Dr. Traquina examined plaintiff and prescribed "state crepe-soled 11EEE" boots.

Plaintiff notified the medical department January 22, 2003, he had not received his boots back after sending them off for installation of crepe soles. Traquina contacted Medical

1 Technical Assistant Rowden about the missing boots, who advised
2 to wait another month.
3    Plaintiff pursued grievance # CSP-S-03-00870 commencing
4 January 31, 2003, complaining he had not yet received the crepe-
5 soled boots and seeking permission to wear tennis shoes to access
6 privilege areas – viz., the law library, visiting area, medical
7 clinic – in the interim.  Defendants Webster, a Medical Technical
8 Assistant, and Cervantes, Appeals Coordinator, processed the
9 grievance.  The grievance was granted in part in April 2003 and
10 the crepe-soled boots were re-ordered in May 2003.
11    Plaintiff had not received the crepe-soled boots as of March
12 25, 2004, and requested an interview.  Plaintiff told Webster two
13 years was long enough to wait and plaintiff's back hurt
14 constantly and severely.  Webster said he would find the boots
15 and get back to plaintiff, but he did not.
16    April 22, 2004, plaintiff submitted grievance # CSP-S-03-
17 00870 for second-level review, explaining the grievance was
18 granted the prior year at the first level but he still had not
19 received crepe-soled boots.  Plaintiff explained his physical
20 condition was worsening daily.  April 26, 2004, Cervantes
21 rejected plaintiff's appeal as untimely pursuant to California
22 Code of Regulations 3084.3(c)(6).  May 4, 2004, Appeals
23 Coordinator Gardner instructed plaintiff to start a new grievance
24 against clothing distribution.
25    Plaintiff sought director's level review of grievance # CSP-
26 S-03-00870, explaining his need for special shoes or a lift and

1  recounting his efforts to obtain them.  Plaintiff explained he
2  had relinquished his only pair of state-issued boots for
3  alteration and could not access privilege areas without a "soft-
4  shoe chrono" permitting him to wear tennis shoes.  Plaintiff
5  claimed defendants were violating the Americans with Disabilities
6  Act and the lack of proper foot ware was causing damage to his
7  frame.
8      Plaintiff's grievance was returned with a June 27, 2004,
9  director's level response, directing plaintiff to submit the
10 grievance to the appeals coordinator for completion through the
11 second level.
12     Plaintiff filed a new grievance August 2, 2004, claiming
13 that after "2 years of battling" he still had not received his
14 prescribed modified boots and the delay was causing his condition
15 to worsen and causing severe back pain.  For relief, plaintiff
16 requested his prescription for crepe-soled boots be filled, his
17 prescription for Nerontin for pain be increased, and damage from
18 the delay in providing boots be assessed.  Cervantes returned the
19 second grievance August 5, 2004, unfiled, indicating it was
20 duplicative of # CSP-S-03-00870 and advising plaintiff to submit
21 Form CDC 7362 to medical staff regarding crepe-soled shoes.
22     August 4, 2004, Dr. Franklin examined plaintiff for
23 complaints of back pain.  Franklin prescribed muscle relaxants
24 and Motrin and assessed that plaintiff's back pain was caused by
25 scoliosis and uneven leg length.  Franklin prescribed exercises
26 for back pain.

1    Plaintiff signed his complaint in this action August 19,
2 2004, and filed it September 16, 2004.
3    November 9, 2004, plaintiff was called in to meet with Dr.
4 Solomon and the Medical Legal Coordinator to talk about his
5 "medical appeal." Dr. Solomon November 9, 2004, determined
6 plaintiff required an orthotic device due to his shortened right
7 leg. Solomon referred plaintiff to the orthotic clinic, ordered
8 crepe-soled shoes, and provided plaintiff a soft-shoe "chrono."
9    Orthotics Specialist Plecker examined plaintiff December 22,
10 2004, measuring him for a "lift" for his right shoe.
11    January 20, 2005, Dr. Solomon examined plaintiff and
12 prescribed pain medication and a cane.
13    During March and April of 2005, plaintiff's received pain
14 medication and "chronos" for a low bunk, sick leave and a cane.
15 Plaintiff's new shoes and orthotic device arrived and were
16 provided to him. Plaintiff received a Disability Program
17 Placement Verification April 5, 2005, which found he was mobility
18 impaired in the "DNM" category and suffered from a permanent
19 disability not impacting placement.
20 <u>Disputed Facts</u>
21    What transpired during Franklin's August 3, 2004,
22 examination of plaintiff is disputed. Franklin declares
23 plaintiff did not appear to be in acute distress; plaintiff
24 stated he primarily was interested in obtaining renewal of his
25 pain medication, Neurontin; Franklin knew plaintiff had leg-
26 length difference but plaintiff "never told him about a delay in

7

1  receiving previously-ordered altered state boots, nor did he ask
2  [Franklin] to issue a chrono for altered state boots"; Franklin
3  would have been able to do nothing about the delay had he known
4  of it; and Franklin did not promise to order an x-ray for
5  plaintiff.  Franklin's declaration is silent about whether
6  plaintiff's medical file included documents related to his
7  grievances, and if so whether Franklin read them.
8      Plaintiff declares he told Franklin of the delay in
9  obtaining altered boots, he had been without pain medication for
10 approximately six weeks, and his back hurt so badly he could
11 hardly walk to the appointment.  Plaintiff declares he asked
12 Franklin to reorder plaintiff's appliance and Franklin said the
13 facility no longer had a doctor to treat plaintiff's disability.
14 Plaintiff declares Franklin told plaintiff his curvature of the
15 spine was caused by his disability, and that Franklin would order
16 x-rays to see how bad the curvature was getting.  Plaintiff
17 declares he wrote requests to see a doctor August 8, 2004, and
18 several more times, with no result as of September 9, 2004.

Analysis

20     Summary judgment is not appropriate for any party on
21 plaintiff's Eighth Amendment claims.
22     "The unnecessary and wanton infliction of pain upon
23 incarcerated individuals under color of law constitutes a
24 violation of the Eighth Amendment . . ."  McGuckin v. Smith, 974
25 F.2d 1050, 1059 (9th Cir. 1991).  A violation of the Eighth
26 Amendment occurs when prison officials deliberately are

indifferent to a prisoner's medical needs. Id.  The threshold for a medical claim under the Eighth Amendment is extremely high:

> A prison official acts with "deliberate indifference . . . only if [he] knows of and disregards an excessive risk to inmate health and safety." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted).  Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." Gibson, 290 F.3d at 1188 (citation omitted).  This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Farmer, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin, 974 F.2d at 1059 (alteration and citation omitted).

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (footnote omitted).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A prisoner has a "serious" need for medical treatment if she has an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects her daily activities, or chronic and substantial pain. Id. at 1059-60, citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir.1990).

////

Delay in medical treatment amounts to deliberate indifference if (1) it seriously affected the plaintiff's medical condition and (2) defendants were aware the delay would cause serious harm. Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 408 (9th Cir. 1985).

It is not disputed that as a result of an old accident, plaintiff had one leg longer than the other, which required special shoes to avoid pain.

Plaintiff has submitted the relevant prison instructions to inmates to obtain medical appliances dated March 27, 2001. See Ex. M to plaintiff's motion for summary judgment. The document appears on its face to be authentic and defendants have not objected to it. The procedure required prisoners first have a "medical chrono" that justifies a medical appliance, then obtain a prescription from a clinic physician, deliver the prescription to the clothing distribution room, pay $10 for a new pair of prison boots, take the prescription and new boots to the Medical material and Stores Supervisor who orders crepe-soled shoes from the California Medical Facility and, when they are returned, "ducats" the prisoner to receive them.

In October 2002, a warehouse manager sent a memorandum to a procurement officer complaining the medical department was issuing too many prescriptions for crepe-soled shoes and not following the March 2001 protocol. The memorandum implies but does not explicitly say that clinic physicians were issuing prescriptions without the required "medical chrono" on form CDC

128-C.  In June 2003, the warden modified the protocol by requiring the chief medical officer (Traquina) endorse his final approval upon any prescription for crepe-soled shoes.

In light of these procedures the Medical Department and its staff had substantial responsibility to ensure prisoners received orthopedic foot ware as medically necessary.  It is undisputed such foot ware – viz., crepe-soled boots plus an insert or "lift" in the right boot – was medically necessary for plaintiff.  The record suggests, but does not establish, that Drs. Traquina and Franklin knowingly shirked their responsibilities to plaintiff and abandoned their patient to the whims of the prison bureaucracy.  The original physician's order for crepe-soled boots was lost while being filled.  Subsequent orders made in granting plaintiff's grievance likely failed to meet procedural requirements; in any event the boots did not appear.  Nothing in plaintiff's medical record before November 2004 indicates a "lift" or insert had been prescribed or ordered for plaintiff's right boot if the boot ever materialized.

Currently it is impossible to place responsibility for failing to provide plaintiff's shoes and lift for 2-3 years.  To establish liability plaintiff must show someone with authority to address his need was deliberately indifferent to it.  The defendants have been no help to the court whatever in this regard.  Plaintiff has furnished some documents that shed some light on the relevant question but they are written in a patois – viz., "ducats," "chronos," etc. - indiscernible to the court yet

critical for the necessary understanding.  Fault may lie with none of the named defendants, but rather with the officials who established a protocol for obtaining medical prosthetic devices that are incomprehensible and virtually impossible for prisoners to implement and thus entirely indifferent to Eighth Amendment rights of prisoners in need of medical care for serious medical needs.  On the present record, the court can neither place that responsibility nor recognize that any of the named defendants do not share it in a way that may expose him to liability.  Nor can the court presently determine whether any defendant is entitled to qualified immunity.  The Attorney General has furnished briefs less helpful than the pro se plaintiff's.

    The court will recommend denying summary judgment for any party on plaintiff's Eighth Amendment claims.  Plaintiff will be permitted an opportunity to discover who is responsible for imposing the instructions and protocols he has provided and move to amend his complaint to name that person as defendant. Plaintiff may seek leave to add the warden as a defendant and move for a preliminary injunction requiring necessary medical devices be provided to him forthwith.

    Plaintiff seeks summary judgment on his ADA claims and defendants do not oppose. To prevail under Title II of the Americans with Disabilities Act (ADA), plaintiff must establish: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's specified services, programs, or

activities, and (3) such exclusion or discrimination was because of his disability. <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002). If plaintiff seeks compensatory damages, he must allege defendants knew that harm was substantially likely and nevertheless failed to act to prevent it. <u>See</u> <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138-39 (9th Cir. 2001). The undeveloped factual record precludes summary judgment for plaintiff on his ADA claims.

Defendants seek summary judgment on plaintiff's due process claim on the ground it is unexhausted, and plaintiff does not oppose. The record reflects the claim is unexhausted.

<u>Standard on Motion to Dismiss</u>

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept plaintiff's allegations as true, read the complaint most favorably to plaintiff, give plaintiff the benefit of every reasonable inference that appears from the pleading and argument of the case and dismiss the complaint only if it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Wheeldin v. Wheeler</u>, 373 U.S. 647, 658 (1963); <u>Retail Clerks International Association, Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 754 n.6 (1963); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). The court may consider documents attached to the complaint in evaluating a motion to dismiss. <u>Parks School of Business, Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995).

////

Analysis

Franklin's arguments the pleading fails to state a claim should be rejected under the analysis set forth regarding summary judgment.

Franklin's arguments concerning exhaustion also should be rejected. Title 42 of the United States Code § 1997e(a) provides a prisoner may bring no § 1983 action until he has exhausted such administrative remedies as are available. The requirement is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The administrative remedy must be exhausted before suit is brought and a prisoner is not entitled to a stay of judicial proceedings in order to exhaust. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

The California Department of Corrections' administrative grievance procedure is set forth in Title 15 of the California Administrative Code at sections 3084.1, et seq. California prisoners or parolees may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." 15 CAC § 3084.1(a).

Ordinarily, a grievance must be taken to a second- and third-level appeal before exhaustion is complete. Id.

Here, however, plaintiff's grievance was granted at the first level and therefore he was not required to pursue it further. Gomez v. Winslow, 177 F. Supp. 2d 977, 985 (N.D. Cal. 2001) ("Because [the plaintiff] had, in essence, 'won' his inmate appeal, it would be unreasonable to expect him to appeal that

victory before he is allowed to file suit."); Clement v. California Department of Corrections, 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002) (exhaustion satisfied where relief was granted at lower level of grievance system); Brady v. Attygala, 196 F. Supp. 2d 1016-23 (C.D. Cal. 2002) (inmate prevailed on grievance requesting to be seen by outside eye specialist and exhaustion was met where plaintiff had obtained "all the relief he [could] extract from the prison administrative process").

Franklin argues plaintiff file his grievance, which did not name Franklin, before Franklin even examined plaintiff. All claims arising from the ongoing course of treatment for plaintiff's single medical problem were within the scope of plaintiff's initial grievance. See Gomez v. Winslow, 177 F. Supp. 2d 977; Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000); Clement v. California Department of Corrections, 220 F. Supp. 2d 1098 (N.D. Cal. 2002); Torrence v. Pelkey, 164 F. Supp. 2d 264 (D. Conn. 2001). Plaintiff's claims against Franklin are exhausted.

Accordingly, the court hereby recommends that:

1. Defendant Franklin's December 20, 2004, motion to dismiss be denied;

2. Plaintiff's February 1, 2005, motion for summary judgment be denied;

3. The May 23, 2005, cross-motion for summary judgment of defendants Traquina, Webster and Cervantes be denied, except as to plaintiff's due process claims which should be dismissed

1 without prejudice for failure to exhaust administrative remedies;
2 and
3     4.  Defendant Franklin's May 25, 2005, cross-motion for
4 summary judgment be denied.
5     Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these
6 findings and recommendations are submitted to the United States
7 District Judge assigned to this case.  Written objections may be
8 filed within ten days of service of these findings and
9 recommendations.  The document should be captioned "Objections to
10 Magistrate Judge's Findings and Recommendations."  The district
11 judge may accept, reject, or modify these findings and
12 recommendations in whole or in part.
13     Dated:  August 22, 2005.

                                    /s/ Peter A. Nowinski
                                 PETER A. NOWINSKI
                                 Magistrate Judge

/lout1937.f&r xmsj